The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young and the briefs and arguments before the Full Commission. The Full Commission also admitted into evidence an affidavit of David Starling, dated September 19, 2001. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award, except for a credit for disability pay. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff and defendant at all relevant times herein.
3. The defendant was a duly qualified self-insured at all times relevant herein.
4. The parties stipulated to the plaintiff's average weekly wage of $769.00, which yields a compensation rate of $512.67.
5. The parties stipulated to the plaintiff's personnel file and plaintiff and defendant's Discovery Responses.
6. The parties stipulated to the plaintiff's medical records from Duke University Medical Center.
7. The issues presented are:
 a) Whether the plaintiff contracted the occupational disease of major depression and job related stress as a result of his employment with the defendant as a police officer?
 b) Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 49 year old college graduate.
2. Plaintiff began working for the defendant on June 12, 1972 as a policeman. Plaintiff's job duties included police and fire training, patrol work and protecting the citizens of Durham.
3. Plaintiff's work as a policeman was stressful and unpredictable. During his 25 year career, he made between 7,000 and 10,000 arrests. Plaintiff also encountered many life-threatening and gruesome work-related incidents as a policeman. Once, a person pointed a rifle at his head and pulled the trigger but the rifle did not fire. Another time he responded to a call where a woman shot herself in the mouth with a 12-gauge shotgun and blew off her mouth and jaws.
4. As a result of his job with defendant, plaintiff experienced constant headaches, insomnia, risk seeking behaviors, sadness, chest pains, irritability and helplessness, among other symptoms.
5. Plaintiff presented to Dr. Judith Herman at Employee Assistance for job-related chronic stress, chronic pain and depression. Dr. Herman referred plaintiff to Dr. Michael A. Babyak, a psychologist. Plaintiff presented to Dr. Babyak on May 8, 1997 and again reported stress and depression and also reported a history of heart disease. Dr. Babyak diagnosed depression and determined that plaintiff was fiercely angry about his work and might consequently pose a danger to himself or others if he were to return to work without appropriate therapy. Dr. Babyak strongly recommended that plaintiff take indefinite sick leave and referred him to Dr. Valerie Holmes, psychiatrist, for anti-depressant medication.
6. On May 27, 1997, plaintiff presented to Dr. Holmes where he reported experiencing insomnia, suicidal ideation, chest pains and diminished concentration. Dr. Holmes diagnosed major depression and prescribed Prozac.
7. Plaintiff continued to treat with Dr. Babyak and with Dr. Holmes. Dr. Babyak urged plaintiff to retire from his job with the defendant and/or to take indefinite sick leave.
8. Dr. Babyak said plaintiff's work situation was the primary stressor in his life and that plaintiff met "virtually every criteria on the DMS-IV for major depression." Dr. Babyak determined that plaintiff was at an increased risk of developing job related stress and major depression when compared to members of the general public due to his history and tenure as a police officer. Dr. Babyak also said plaintiff's work place history, job tenure with the defendant and his job duties significantly contributed to the development of his job-related stress and major depression. Dr. Babyak further rendered an opinion that plaintiff should not return "to any sort of full-time work."
9. Dr. Holmes could offer no opinion as to whether or not plaintiff's job with defendant placed him at an increased risk for developing major depression as compared to members of the general public. However, Dr. Holmes said that if presented with statistics that police officers are more susceptible to developing major depression as compared to members of the general public, she could then render an opinion that plaintiff was at an increased risk for major depression. Dr. Holmes said plaintiff's job duties with the defendant contributed to the development of plaintiff's major depression. Dr. Holmes also said plaintiff should not return to work.
10. Dr. Holmes left her practice and plaintiff presented to Dr. Lakshmi S. Kamaraju, a psychiatrist, on January 30, 1998. Plaintiff reported frequent headaches, fatigue and insomnia. Dr. Kamaraju diagnosed major depression, prescribed an increase in Prozac and recommended that plaintiff continue to treat with Dr. Babyak and his cardiologist.
11. Dr. Kamaraju said plaintiff's job duties with the defendant placed him at an increased risk of developing major depression as compared to members of the general public. Dr. Kamaraju also said plaintiff's job duties with defendant significantly contributed to plaintiff's development of major depression. Dr. Kamaraju said plaintiff should not return to police work.
12. Plaintiff's last day of work for defendant was May 31, 1997, when he left work on sick leave. Plaintiff's retirement was effective January 1, 1998. Plaintiff drew disability pay of $502.16 a week from April 1, 1997, through December 31, 1997. This disability came from a plan in which the employor contributed 42.6934 percent.
13. The Full Commission finds that plaintiff's employment as a police officer for defendant was a significant causal factor in plaintiff's development of major depression and plaintiff's job with defendant placed him at an increased risk for developing major depression.
14. As a result of plaintiff's job-caused major depression, he has been unable to work and earn wages in his regular employment or in any other employment since May 13, 1997. There is no evidence to indicate that the plaintiff is capable of returning to gainful employment in any other capacity at this time or at any other time in the foreseeable future. Additionally, if plaintiff were ever able to return to gainful employment, it should not be as a police officer or in any other related field of employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff developed major depression due to causes and conditions characteristic of and peculiar to his employment with defendant. His major depression is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of his compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $512.67 per week from May 31, 1997 through the date of the hearing before the Deputy Commissioner and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. It has yet to be determined what, if any, permanent partial disability plaintiff may have sustained as a result of his acquisition and aggravation of major depression and depressive anxiety disorder. N.C. Gen. Stat. § 97-31.
4. As a result of plaintiff's compensable occupational disease, plaintiff is entitled to have the defendant pay for all of his medical expenses incurred or to be incurred, as a result of his compensable occupational disease, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to receive and shall accept vocational rehabilitation services to be provided by the defendant, once the plaintiff has been released by his treating psychologist or psychiatrist to return to work.
6. Defendant is entitled to a credit of $214.39 per week from April 1, 1997, through December 31, 1997, for the 42.6934 percent it paid for his disability compensation plan. Such credit amounts to $8,422.46. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees hereinafter approved, defendant shall pay temporary total disability compensation at the rate of $512.67 per week for the time period beginning April 1, 1997 and continuing for so long as the plaintiff remains disabled or until further Order of the Commission. The portion of this award that has accrued shall be paid in a lump sum, subject to the attorney's fees hereinafter approved and subject to the credit of $8,422.46 set forth in paragraph 6 of the Conclusions of Law.
2. Defendant shall pay all medical expenses incurred or to be incurred by the plaintiff as a result of his occupational disease of major depression and depressive anxiety disorder when bills for the same are submitted for approval. These medical services are likely to last for some indefinite period of time into the future.
3. Defendant shall provide and plaintiff shall accept vocational rehabilitation once plaintiff has been released by his treating psychologist and psychiatrist to return to work.
4. As plaintiff has not yet reached the end of the healing period for his major depression, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment, if any, for his major depression, which may be due, either party may request a hearing from the Commission to resolve this issue.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
6. Defendant shall pay the costs, including expert witness fee to Dr. Lakshmi S. Kamaraju in the amount of $180.00.
This 26th day of September 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER